The STATE of Ohio, Appellee,

v.

SMITH, Appellant.

[Cite as *State v. Smith* (1992), 84 Ohio App.3d 647.]

Court of Appeals of Ohio,
Greene County.

No. 91–CA–95.

Decided Dec. 31, 1992.

648

*William F. Schenck*, Greene County Prosecuting Attorney, and *Robert K. Hendrix*, Assistant Prosecuting Attorney, for appellee.

*John H. Rion*, for appellant.

GRADY, Judge.

Defendant Craig Winfield Smith appeals from two convictions for gross sexual imposition, in violation of R.C. 2907.05(A)(4), for having sexual contact with males less than thirteen years of age. Smith argues on appeal that the trial court erred to his prejudice when it admitted expert testimony concerning behavior typical of a pedophile who engages in sexual abuse of children. Smith also argues prejudicial error in the introduction of evidence of his sexual contact with a third young male.

We find that the trial court erred in permitting expert testimony concerning pedophilic behavior pursuant to Evid.R. 702 because, for the purpose for which it was offered, it did not concern a matter outside the competence of the jury and because it was evidence of a trait of character offered to prove that the defendant acted in conformity therewith, and thus inadmissible under Evid.R. 404.

We find that evidence of the defendant's alleged sexual activity with a person other than the alleged victims was prohibited by R.C. 2907.05(D) because it failed to constitute one of the specific exceptions of R.C. 2945.59, and that its admission constituted prejudicial error.

Because we cannot find the foregoing error harmless beyond a reasonable doubt, the judgment of conviction will be reversed and the case remanded for a new trial.

## I

Defendant Craig Smith was charged by indictment with two violations of R.C. 2907.05(A)(4), which states:

"No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of such person."

The indictment charged each offense in the foregoing terms. It alleged in Count I that the offense had occurred between August 1 and August 31, 1990. The conduct forming the offense in Count II was alleged to have occurred between June 1 and July 31, 1990.

B.G. testified that he is twelve years of age and that he met defendant Smith when Smith was a fifth grade teacher at Valley Forge Elementary School, in Huber Heights, and B.G. was a student there. B.G. testified that though Smith was not his teacher, Smith befriended B.G. and took him and other young children to sporting events and out to eat. B.G. testified that he spent the night at Smith's home in Greene County after these events, on about five occasions. B.G. stated that on one occasion, at the end of August 1990, Smith entered the room in which B.G. was sleeping and first touched B.G.'s genitals through his clothing and then moved his hand under B.G.'s clothing and touched his buttocks. After removing his hand Smith again moved it under B.G.'s clothing and touched his buttocks a second time. Smith then left the room and returned to a couch in another room, where he had been sleeping.

B.G. testified that neither he nor Smith discussed the event after, but the following morning after he went home B.G. told his mother what had happened, asking her to tell no one else because he was embarrassed. He didn't visit Smith again. About one month later B.G. was interviewed by investigators and related the story in response to their questions.

On cross-examination, B.G. was confronted with his prior statement to a friend and his mother in which he allegedly said that he had not been molested by Smith. B.G. denied making the statement. Defendant also suggested to B.G.

that others had told him the events occurred and that he had adopted their statements. B.G.'s response was inconclusive.

Ronda Ransdell, B.G.'s mother, testified that she trusted Smith because her son liked him and because Smith seemed to be a good person. She confirmed that B.G. had slept overnight at Smith's home on three or four occasions. She confirmed that B.G. told her of Smith's sexual activity with him the morning after the last occasion, which was on August 22, 1990. B.G. was upset when he told her. Ransdell testified that B.G. didn't see Smith again, and that several weeks later Smith called to inquire why. Ransdell asked Smith whether he had shared a bed with B.G. Smith stated he had. Ransdell testified that when she accused Smith of molesting her son, "He said, 'Well, when I was sleeping my hand could have went anywhere * * *.'" Ransdell told no one for several months, until she told B.G.'s school counsellor because B.G. was depressed and performing poorly in school. The allegation caused the investigation to commence and brought out the allegations concerning two other victims.

In support of Count II of the indictment the state produced the testimony of R.R., also a student at Valley Forge School and also twelve years of age when the alleged offense took place. R.R. testified that Smith took him to sporting events, to church, and to Bible school. R.R. stated that he, also, slept over at Smith's home on some occasions, the last at the end of May 1990. On that occasion R.R. and his brother shared a bed and Smith slept in another room. R.R. testified that during the night he awakened to find Smith "grabbing me at my privates and rubbing my butt." R.R. testified that he was frightened. He told his brother the next morning what had happened to him. R.R. said nothing to Smith, who didn't take them home until later in the day. R.R. told no one else about Smith's actions for about two weeks, when he told his parents. Neither believed him. R.R. later told investigators after they questioned him.

On cross-examination, defendant attempted to show that R.R. was mistaken about Smith, that the events were simply a result of his brother "bumping into" him. R.R. denied both.

Both B.G. and R.R. portrayed Smith as a friendly adult who took an interest in them and other young people, and who went out of his way to spend time with them and engage in their interests. This was confirmed by Bonnie Benge, Principal of Valley Forge School, who also indicated a concern that Smith's attentions to students were troublesome to her because they were unwise for a teacher. Benge stated that Smith ate and played with the students, and that he devoted more attention to boys than to girls. Benge stated that on one occasion she saw Smith lift another boy, D.H., from the ground and rub his knee against the boy's buttocks. Benge immediately questioned Smith and learned that he

was tutoring D.H. Benge learned of the allegations of Smith's conduct with B.G. and R.R. shortly after, and became concerned.

D.H. was called by the state, over the objections of defendant Smith. D.H. testified that he was twelve years of age when he met Smith in 1990 at a July 4th parade, after which Smith took him to Christian rock concerts and began tutoring him at D.H.'s home. D.H. stated that after their tutorial lessons they would sometimes wrestle, and that during these times Smith would "grab my private area." D.H. testified that on two occasions when Smith pulled him to his lap D.H. could feel Smith's erect penis rub against D.H.'s buttocks through their clothing. This last happened between July 4 and August 15, 1990. D.H. told no one until he was later questioned by investigators.

The state also called Dr. Barbara Bergman, a licensed criminal psychologist, who was qualified as an expert in sexual abuse problems. The state had apparently indicated that it intended to elicit testimony from Dr. Bergman concerning the methodology typical of pedophiles who sexually abuse children. The state argued that such matters were outside the jury's competence. The defendant objected on grounds of relevance. The court overruled the objection and admitted the testimony pursuant to Evid.R. 702.

Dr. Bergman testified that a "pedophile" is a person who is sexually oriented toward and attracted to children. A "fixated pedophile" is an individual who has never attained adult sexual maturity, who is uncomfortable in adult relationships, and who identifies with children and is more comfortable with them. As adults they are more powerful than children, who are more likely to trust them and respect their wishes. When asked to describe the behavior typical of a pedophile who sexually abuses children, Dr. Bergman stated:

"Well, what my experience has been and the experience of many people who have treated and evaluated fixated pedophiles is that whenever they choose a victim and nobody—nobody knows why anyone in the world is sexually attracted to another person, but by whatever means that occurs, when they choose the child, they proceed to set up a situation very carefully.

"Frequently what happens is the pedophile will invade themselves into the trust of the parents, the families of the child. They will become friends. They will do things for the families. They will create a lot of indebtedness, so to speak, on the part of the family or different members of the family to them. They will do things for the child that are very nice. They will take them places. They will buy them things.

"Typically they choose children who are vunerable [sic] for one reason or another, and maybe children who don't have a father in the family, maybe the family doesn't have enough money to provide everything that children want and

need, and the pedophile will begin to meet some practical needs for the child, make sure that the family is aware of that and very grateful to him. Once the situation is such that everybody trusts him, that's when he will make his move on the child."

Dr. Bergman further testified that the offender would seek to keep his inclinations and activities secret. Her testimony was general in its terms and did not specifically discuss defendant Smith or his alleged victims.

The prosecutor also asked Dr. Bergman whether she is familiar with the Child Sexual Abuse Accommodation Syndrome. She replied that she is, and described the phenomenon as "the whole situation in which children can be abused in a secret manner over a period of time * * *." She stated that the syndrome has five phases: use of confusion to enforce secrecy; a sense of helplessness in the child; entrapment from accommodation; incomplete reporting; and retraction of statements. Dr. Bergman testified that these conditions are the result of the imbalance of power between children and adults and the fact that the adult abuser has gained the admiration and trust of adults to whom a report might be made and who would, the child believes, be unlikely to believe it. As a result, the child reveals the abuse only in slow and tentative steps, and is likely to go no further if presented with disbelief. A qualified counsellor is frequently required to detect the signs and elicit the facts from the abused child. She testified that some victims never report what has happened to them.

Defendant Smith testified and denied the allegations of B.G. and R.R. concerning sexual activity. He admitted that they had slept overnight at his home, but insisted that he stayed in a separate room, did not enter the rooms in which they slept, and did not molest them. He also denied the acts of sexual activity reported by D.H. However, as to each child he admitted that they had spent time together and shared activities, as the boys had related. Smith admitted that he had once lifted D.H. from the ground, as Bonnie Benge reported, but denied any sexual contact, then or otherwise.

Defendant also presented several character witnesses, including three clergymen, who testified to his reputation for good character.

The jury returned verdicts of guilty on both counts of gross sexual imposition. Defendant Smith was sentenced to serve two concurrent terms of imprisonment of eighteen months. The trial court continued bond for appeal. Smith filed a timely notice of appeal and presents two assignments of error.

## II

Appellant's first assignment of error states:

"The trial court committed prejudicial error when it admitted expert testimony about the characteristics of a typical fixated pedophile, which served to deny appellant a fair trial."

Defendant Smith objected to the testimony of Dr. Bergman concerning pedophiles and their behavior, arguing that whether or not he is a pedophile was not relevant and that typicality or "profile" evidence is inadmissible to prove guilt.

The state responded that Dr. Bergman's testimony was proper under Evid.R. 702 and that the defendant could deal with its objectionable features in cross-examination. The state relied on the decision of this court in *State v. Hunter* (Feb. 12, 1991), Montgomery App. No. 11853, unreported, 1991 WL 19402, which permitted testimony by an expert concerning the Child Sexual Abuse Accommodation Syndrome.

The trial court overruled the objection to Dr. Bergman's testimony and permitted the testimony pursuant to Evid.R. 702, which provides:

"In scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

In *State v. Hunter, supra,* we approved the use of expert testimony concerning the Child Sexual Abuse Accommodation Syndrome, which explains why child victims fail to report their sexual abuse promptly, because it was relevant to the credibility of the complaining child witness. In this case the expert testimony was not offered for that purpose, but, instead, for the purpose of proving, by inference, that the defendant had committed the offenses with which he was charged. Such evidence of behavior "typical" of a classification to which the accused allegedly belongs has been disapproved as tending to stereotype the accused, causing the jury to become prejudiced and to "decide the facts based on typical, and not the actual, facts." *State v. Thomas* (1981), 66 Ohio St.2d 518, 521, 20 O.O.3d 424, 427, 423 N.E.2d 137, 140.

Evid.R. 702 is not a rule of relevancy but a rule of competence. Its requirements do not test the relevance of the evidence to be offered. Therefore, the witness offered as an expert must not only be competent to present the testimony but the subject matter of his or her testimony must otherwise be relevant to a fact in issue, either in its own content or by illuminating other evidence that is relevant to such a fact.

The state presented evidence showing that prior to the alleged offenses the defendant had befriended the two alleged victims, taking them to sporting events, out to eat, and to Bible school. The state also presented the testimony of the mother of one of the boys, who testified that she grew to trust the defendant

because of his apparent good intentions toward her son. Also, the defendant's school principal testified that defendant spent an unusual amount of time with young children at school, that he showed a much greater interest in the boys than in the girls among them, and that this behavior was unusual for a teacher.

■ Extrinsic evidence of a scheme, plan, or system leading to a crime charged is admissible pursuant to R.C. 2945.59 and Evid.R. 404(B) when the acts constituting the scheme, plan, or system are part of the immediate background of the crime and inextricably related to it. *State v. Curry* (1975), 43 Ohio St.2d 66, 72 O.O.2d 37, 330 N.E.2d 720. In that event the extrinsic acts must rationally constitute the same transaction that is the object of proof, that is, the crime charged.

■ In this case the defendant's prior behavior with the two alleged victims demonstrates the creation of a relationship that culminated in their sleeping over at his home, enabling him to engage in the crimes charged. It is evidence of acts which, though extrinsic to the crimes charged, constitute the defendant's scheme, plan, or system leading to them. Therefore, that evidence of the defendant's other acts is admissible for those limited purposes.

Dr. Bergman's expert testimony concerning the behavior typical of pedophiles who engage in sexual activity with children was general in nature. It was not probative of the defendant's scheme, plan, or system. Its probative value was only in connection with other evidence of those matters.

Evidence in this general form is not prohibited by Evid.R. 702, which allows expert testimony in the form of an opinion "or otherwise." However, because the testimony of an expert is removed from the facts in issue yet permits the jury to draw inferences from the testimony concerning those facts, the expert's testimony must meet two more particular requirements. First, it must assist the trier of fact by illuminating the meaning of the evidence from which the inferences will be drawn. Second, it must concern a matter outside the competence of the jury to know and properly determine if left unassisted by the testimony of the expert.

■ Dr. Bergman's testimony illuminated for the jury the significance of the other acts of the defendant leading to the offenses alleged, which constitute proof of his scheme, plan, or system. It assisted the jury to understand that evidence and to determine the facts in issue to which it was relevant. Therefore, it satisfied the first requirement of Evid.R. 702.

■ The second requirement of the rule is more problematic. While the appropriate test is whether the trier will receive "some appreciable help" from the expert testimony (see 1 Weissenberger, Ohio Evidence [1993], Section 702.3), and the trial court is granted broad discretion to admit or exclude it, the special

quality of that form of evidence requires that it provide the trier of fact with some means of determination not otherwise available to it. The Staff Note to Evid.R. 702 provides the following insight:

"Rule 702 restates the law of Ohio as to the admissibility of testimony from expert witnesses.

"In *Hartford Protection Insurance Co. v. Isaiah C. Harmer* (1853), 2 Ohio St. 452, the general rule that a witness was restricted to facts in his testimony was stated as well as the exception to the general rule in the case of an expert witness. The court said, at 457:

" 'In everything pertaining to the ordinary and common knowledge of mankind, jurors are supposed to be competent, and, indeed, peculiarly qualified to determine the experienced connection between cause and effect, and to draw the proper conclusion from the facts before them. But they are selected with no view to their knowledge of particular services, trades, and professions, requiring a course of previous study and preparation. As questions connected with these will very often arise, and as the law deprives the jury of no reliable means for ascertaining the truth, it allows them to be aided, in making the proper application, by the opinions of witnesses possessing peculiar skill in those particular departments. But this is only permitted where the nature of the question at issue is such that the jury are incompetent to draw their own conclusions from the facts, without the aid of persons whose skill or knowledge is superior to their own, and such as inexperienced persons are unlikely to prove capable of forming a correct judgment upon, without such assistance. *Fish v. Dodge* 4 Denio 311.'

"The basic principle is restated in *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 40 O.O.2d 87, 228 N.E.2d 304, where it was held in the first paragraph of the syllabus:

" 'In all proceedings involving matters of a scientific, mechanical, professional or other like nature, requiring special study, experience or observation not within the common knowledge of laymen, expert opinion testimony is admissible to aid the court or the jury in arriving at a correct determination of the litigated issue.' "

■ Though an argument may be made that Dr. Bergman's testimony concerning the behavior typical of pedophiles who engage in sexual activity with children could help the jury to evaluate and understand the prior act evidence showing the defendant's scheme, plan, or system, a palpable benefit in that regard is not evident. Nothing in Dr. Bergman's testimony performing that function is beyond the experience of the average layman. The facts of the defendant's prior behavior are well within the capacity of the jury to understand

them as causes from which to draw the proper connection to the results alleged. The jury was wholly competent to understand that, according to the state's theory, the defendant had ingratiated himself with these children in order to place them in situations in which he could engage in sexual activity with them. Further, the purpose of that alleged activity, his own sexual gratification, was apparent. Dr. Bergman's testimony offered no greater means than that already possessed by the jury to understand that other evidence. To the extent that her testimony was admitted for that purpose its admission was improper.

Dr. Bergman's testimony concerning the sexual orientation of persons classified as pedophiles and the behavior they typically exhibit which leads to their sexual abuse of children, though general in nature and without reference to defendant Smith specifically, was probative of the issue of "character":

"The term 'character' refers to a generalized description of a person's disposition or a general trait such as honesty, temperance or peacefulness. Generally speaking, character refers to an aspect of an individual's personality which is usually described in evidentiary law as a 'propensity.'" (Footnote omitted.) 1 Weissenberger, Ohio Evidence (1993), Section 404.3.

Certain evidence, otherwise relevant, is prohibited by Evid.R. 404 when offered for specific purposes set out in the rule. Section (B) of the rule prohibits evidence of other acts of a person when they are offered to prove his character in order to show that he acted in conformity therewith. Section (A) prohibits evidence of a person's character or a trait thereof when offered by the state to show that he acted in conformity with his character to commit the crime alleged, except that the state may present such evidence to rebut character evidence contra first offered by the accused.

The basic thrust of Evid.R. 404 concerns the "propensity rule," which is a basic principle that evidence of a person's character trait is not admissible for the purpose of proving that he acted in conformity with his character on a particular occasion. It prohibits use of propensity to demonstrate actions conforming to the propensity. It creates a forbidden inferential pattern, in which character or a trait of it is used to show propensity and to demonstrate therefrom conforming conduct. The policy of the rule is not based on relevance but upon the danger of prejudice. See 1 Weissenberger, Ohio Evidence (1993), Sections 404.4 and 404.23.

In response to the defendant's objections to Dr. Bergman's testimony, the prosecutor argued that the witness's testimony concerning the behavior of pedophiles was offered to " * * * describe * * * the method of an individual who would commit a pattern of acts such as these * * *." In his closing statement, the prosecuting attorney argued:

"Now, you also heard some testimony from an expert psychologist named Barbara Bergman, and she came in here and told you that she has dealt with and treated at least 50 child sexual abusers and, also, she said many other adults and child victims of child sexual abuse.

"She talked to you about behaviors which are common to pedophiles from her own experience and from the experience of others who have dealt with these types of people.

"What did she say? First of all, remember, she said she has never examined this man. She has never talked to [D.H., R.R., or B.G.]. The only thing she knows about this man is that he is on trial here today. That's all she knew. She just came in here, and in my experience this is how a pedophile behaves.

"What does he do? First of all, she said that these pedophiles relate better to children than they do to adults. They tend to hang around children more than adults and to have child friends, and she told you the reason why they feel more comfortable that way is because they, themselves, are very immature, but when they are choosing a victim, what do they do? They set the situation up carefully.

"They gain the trust of the parents and family and create an indebtedness to that family. They do nice things for the child to help create that indebtedness, and they choose children who are vulnerable, and then once he gains that trust, the pedophile will make his move on the child, and in the majority of cases, there is no violence.

"A pedophile honestly believes that he's not doing any harm to the child, but he is.

"Now, what else did she say? Well, first of all, let me ask you, after you have heard those behaviors, does it sound like anybody we have been talking about? Does it sound like anybody we have been talking about in this Court?"

■■■ Though the content of Dr. Bergman's testimony was general in nature, it was, when connected with evidence of the defendant's *other acts* with children, offered by the state circumstantially to infer that the defendant is a pedophile, that is, one who is sexually oriented to and attracted toward children. This aspect of his personality was then offered as a *propensity* from which the jury was asked to infer that he had acted in accordance with his propensity to commit the crimes alleged.

The foregoing inferential pattern presents two difficulties. First, it violates the rule of evidence that one inference cannot be deduced from or predicated upon another inference, but must be predicated on the facts supported by the evidence. See 42 Ohio Jurisprudence 3d (1983), Evidence and Witnesses, Section 124. Second, it employs evidence of a defendant's character to prove that he acted in

conformity therewith to commit the offense alleged. This is the inferential pattern—from extrinsic act, to character or propensity, to conforming conduct— prohibited by Evid.R. 404. Its only unique aspect in this case is that by proving character circumstantially, from other acts rather than directly through reputation or opinion, it implicated both sections of Evid.R. 404, but in reverse order.

Evid.R. 404 does not wholly prohibit "propensity evidence" offered by the state. Section (A)(1) provides that an accused may introduce evidence of his good character to show that on the particular occasion involving facts of the crime alleged he acted in conformity with his good character and did not commit the crime. The evidence would suggest that the pertinent trait of his character is a propensity consistent with his theory of the case, and is behaviorally incompatible with the crime with which he is charged. By opening the issue of his character in that manner, the accused permits the state to rebut with character evidence tending to show his propensity to commit the acts and offenses alleged.

The state's right to introduce propensity evidence to prove the crime alleged is strictly limited:

"It is universally the rule that the prosecution, as part of its case in chief, may not offer evidence of the accused's character in order to show his propensity to perform the acts underlying the crime that is charged. Only the accused may introduce character evidence by offering appropriate testimony regarding his character in his case in defense. Once, however, the accused has introduced evidence as to his good character, the prosecution, in its case in rebuttal, may offer evidence attacking the character of the accused." (Footnote omitted.) 1 Weissenberger, Ohio Evidence (1993), Section 404.5.

The testimony of Dr. Bergman was offered in the state's case in chief, over the objection of the defendant. At that time defendant had introduced no evidence of his good character. In his opening statement counsel for the defendant described him as a good person, perfectly normal, and an idealist, who believed that he could help young children. Opening statements are not "evidence," and these statements concerning defendant by his counsel did not open the issue of his character to the extent required to permit the state to present in its case in chief evidence of his character for the purpose of proving that he acted in conformity therewith to commit the crime.

We find that the expert testimony of Dr. Bergman constituted evidence tending to show a trait of the defendant's character offered for the purpose of proving that he acted in conformity with that trait on the occasion of the crimes alleged. The fact that the evidence was circumstantial in nature and provided a set of typical behaviors or "profile" to which the defendant's behavior was then matched does not avoid its objectionable feature, which is determined by the

purpose for which it is offered. When that purpose is the inference prohibited by Evid.R. 404, the evidence is inadmissible.

 The trial court abused its discretion in admitting Dr. Bergman's general testimony concerning pedophiles and the behavior of those pedophiles who sexually abuse children. We cannot find that the error was harmless beyond a reasonable doubt. Therefore, the error is prejudicial and the judgment of the trial court will be reversed.

Appellant's first assignment of error is sustained.

## III

Appellant's second assignment of error states:

"The trial court committed prejudicial error by admitting evidence of 'other acts' by appellant, and thereby denied the appellant due process of law."

The defendant objected to the testimony of D.H., arguing that the evidence was extrinsic to the operative facts of the offenses charged and not admissible under the exceptions of Evid.R. 404(B), which permit introduction of such evidence for certain limited purposes.

The state argued that the testimony of D.H. was admissible pursuant to Evid.R. 404(B) for the purposes stated in the rule because the defendant denied that he had committed the offenses charged.

The trial court overruled the objection and permitted the testimony "as it may deal with the absence of mistake or accident * * *."

Defendant Smith was charged with two counts of gross sexual imposition, in violation of R.C. 2907.05. Paragraph (D) of that statute provides:

"Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

The testimony of D.H. alleged a specific instance of the defendant's sexual activity with a person other than the victims concerned in the two offenses charged. It did not involve evidence of the origin of semen, pregnancy, or disease. Therefore, it was admissible only under R.C. 2945.59, which provides:

•

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

 R.C. 2945.59 is consistent with Evid.R. 404(B), except that the statute is not directly concerned with proof of identity, which is a matter specified in the rule. Both provisions, as they codify an exception to the common law, must be strictly construed against admissibility of evidence of other acts of wrongdoing. *State v. Burson* (1974), 38 Ohio St.2d 157, 67 O.O.2d 174, 311 N.E.2d 526. Such other acts may or may not be similar to the crime charged, but to be admissible they must tend to show by substantial proof one or more of the things enumerated. *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682. Such evidence is never admissible when its sole purpose is to establish that the defendant committed the act alleged of him in the indictment. *State v. Flonnory* (1972), 31 Ohio St.2d 124, 60 O.O.2d 95, 285 N.E.2d 726; *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *State v. Thompson* (1981), 66 Ohio St.2d 496, 20 O.O.3d 411, 422 N.E.2d 855.

 In respect to evidence of other acts tending to show the absence of mistake or accident, R.C. 2945.59 limits such evidence to that concerning the defendant and "the absence of mistake or accident *on his part.*" (Emphasis added.) This provision does not permit evidence of other acts of the defendant to rebut suggestions raised in the cross-examination of the state's witnesses that *they* are mistaken. Only the absence of mistake or accident on the part of the defendant may be so shown, and only when it is a fact in issue.

 Defendant Smith maintained throughout the proceeding that he never had sexual contact with either alleged victim. The facts to which the victims testified demonstrate conduct that is unquestionably knowing and intentional. Mistake or accident were not material issues in the defense or in the state's case. In those circumstances, it was error to admit testimony concerning other sexual acts of the defendant on the theory that those acts proved the absence of mistake or accident. See *State v. Eubank* (1979), 60 Ohio St.2d 183, 14 O.O.3d 416, 398 N.E.2d 567.

 The testimony of Ronda Ransdell, a state's witness, if believed, shows that defendant Smith asserted a theory of accident when he told her that when he slept with her son, "my hand could have went anywhere * * *." However, her

testimony was uncorroborated, was denied by the defendant, and is inconsistent with the operative facts of the offense related by the alleged victim, who denied that he and the defendant had slept in the same bed. We believe that such testimony offered by the state from one witness is an insufficient basis to permit the state to rebut it with the testimony of another state witness showing other acts of wrongdoing by the defendant pursuant to R.C. 2945.59, when the provisions of R.C. 2945.59 must be strictly construed against admissibility.

■ Evidence of other acts of wrongdoing on the part of the defendant are also admissible under R.C. 2945.59 to prove the defendant's motive or intent and his scheme, plan, or system in doing the act in question, when those matters are material issues.

In *State v. Curry* (1975), 43 Ohio St.2d 66, 72 O.O.2d 37, 330 N.E.2d 720, the defendant was charged with statutory rape for having sexual intercourse with a girl of thirteen. The trial court admitted evidence that the defendant had sexual intercourse with another girl of the same age approximately six months later. Considering the admissibility of the evidence of the later act to prove Curry's motive or intent to commit the crime charged, the court stated:

" 'Motive' has been defined by this court as ' * * * a mental state which induces an act.' *Shelton v. State* (1922), 106 Ohio St. 243, 248, 140 N.E. 153 [154]. Another court has described it as ' * * * the moving power which impels * * * action for a definite result.' *People v. Molineux* (1901), 168 N.Y. 264, 297, 61 N.E. 286 [296]. Since it is assumed that human conduct is prompted by a desire to achieve a specific result, the question of motive is generally relevant in all criminal trials, even though the prosecution need not prove motive in order to secure a conviction. See *Fabian v. State* (1918), 97 Ohio St. 184, 119 N.E. 410. However, the motive for the alleged crimes involved in the present case are [*sic* ] apparent. A person commits or attempts to commit statutory rape for the obvious motive of sexual gratification. Since motive can not be deemed to have been a material issue at appellee's trial, 'other acts' testimony was not admissible to prove this matter." *Id.*, 43 Ohio St.2d at 70–71, 72 O.O.2d at 39–40, 330 N.E.2d at 724. See, also, *State v. Whitmer* (May 20, 1986), Marion App. No. 9–84–39, unreported, 1986 WL 5908.

We see no difference between the facts and issues before us and those of *Curry* with respect to the use of evidence of other acts the defendant's sexual activity to prove his motive or intent to commit the crimes charged. While the acts of which the defendant was accused would certainly be viewed as perverted and depraved according to most views, the motive and intent of the alleged actor remain, nevertheless, those of sexual gratification. That fact is apparent from the charges and is not a material issue. Evidence of other crimes, wrongs, or acts

may not be introduced to prove his motive or intent in committing the operative acts of the offenses alleged.

Evidence of other acts of wrongdoing is also admissible to prove the accused's scheme, plan, or system in doing the acts in question. However, it is relevant in only two situations:

" * * * First, those situations in which the 'other acts' form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment. In such cases, it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts. To be admissible pursuant to this sub-category of 'scheme, plan or system' evidence, the 'other acts' testimony must concern events which are inextricably related to the alleged criminal act. * * *

"Identity of the perpetrator of a crime is the second factual situation in which 'scheme, plan or system' evidence is admissible. One recognized method of establishing that the accused committed the offense set forth in the indictment is to show that he has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes. *Whiteman v. State, supra* (119 Ohio St. 285, 164 N.E. 51); *Barnett v. State* (1922), 104 Ohio St. 298, 135 N.E. 647." *State v. Curry,* 43 Ohio St.2d at 73, 72 O.O.2d at 41, 330 N.E.2d at 725–726.

 Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime. In that event other act evidence tends to show the defendant's identity as the perpetrator by showing that he committed crimes of a similar methodology within a period of time reasonably near to the offense on trial, which itself would constitute probative evidence of the probability that the same person, whoever he or she may be, committed both crimes. *State v. Curry, supra; State v. Hector* (1969), 19 Ohio St.2d 167, 48 O.O.2d 199, 249 N.E.2d 912; *State v. Shedrick* (1991), 61 Ohio St.3d 331, 574 N.E.2d 1065. If the other act evidence tends to establish the identity of the accused it is competent evidence, no matter what else it may prove. *Barnett v. State* (1922), 104 Ohio St. 298, 135 N.E. 647. However, the identity of the perpetrator must be in dispute to permit use of other act evidence for this purpose.

 In this case the fact of the crimes is not open and evident, but is clearly in issue. However, if from the evidence the crimes are determined to have taken place, there is no dispute concerning the identity of the perpetrator. No person other than defendant Smith could have committed the criminal acts alleged. Because the identity of the perpetrator is not in issue from the operative facts of

the offenses alleged and demonstrated by the state's evidence, other act evidence is not admissible to prove identity.

■ In his cross-examination of R.R. the defendant suggested to R.R. that the events he reported resulted not from the acts of the defendant but from those of his brother, who had "moved around" on the bed and "bumped into" R.R. while they were sleeping. Counsel also asked: "And didn't you wake up the next morning and say, D --, were you messing around with me last night?" R.R. denied the possibility. While this line of questioning proposes a mistake of identity, the principal mistake suggested is in the occurrence of the acts themselves. In our view the suggestion does not create a material issue of identity, certainly not one of sufficient substance to justify the introduction of other act evidence of this kind, which is inflammatory in nature and highly prejudicial.

■ Other act evidence is also permitted under the rule of *Curry* to prove the defendant's scheme, plan, or system when it forms the immediate background of the offense alleged and it would be difficult to prove that the accused committed the crime alleged without also introducing evidence of other acts. When the other acts demonstrate criminal conduct they should be " 'so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged.' " *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 317, 18 O.O.3d 482, 488, 415 N.E.2d 261, 269, quoting *United States v. Turner* (C.A. 7, 1970), 423 F.2d 481, at 483–484, certiorari denied (1970), 398 U.S. 967, 90 S.Ct. 2183, 26 L.Ed.2d 552. Absent that nexus, the other criminal act, whether like or unlike the one charged or similar or dissimilar to it, cannot be used to prove the scheme, plan, or system employed by the accused to commit the offense for which he or she is on trial.

■ Where the other acts concerned are chronologically and factually separate occurrences, they are generally not inextricably related to the acts alleged in the indictment. See *State v. Eubank, supra.* In *State v. Thompson* (1981), 66 Ohio St.2d 496, 20 O.O.3d 411, 422 N.E.2d 855, the rule was applied to exclude evidence of subsequent sexual activity with the same alleged victim to prove gross sexual imposition. We believe that same consideration applies here. The acts to which D.H. testified, though they occurred during the same three-month period as those alleged in the indictment, were wholly separate from the offenses charged, factually and chronologically. They were not a part of the immediate background of the crimes alleged. They may not be used to show the defendant's scheme, plan, or system in doing them.

Absent the foregoing legitimate purposes, the only remaining purpose served by the testimony of D.H. was to establish that defendant Smith committed the

acts with the other two boys alleged as offenses in the indictment. Such evidence is not admissible when that is its sole purpose. *State v. Flonnory, supra; State v. Lytle, supra; State v. Thompson, supra.*

We conclude that the testimony of D.H. concerning the defendant's alleged sexual activity with a person other than the victims of the crimes of gross sexual imposition with which he was charged was inadmissible pursuant to R.C. 2907.-05(D) to prove those crimes. The trial court erred in permitting its introduction. We cannot find that the error was harmless beyond a reasonable doubt. The second assignment of error is sustained.

## IV

Having sustained both assignments of error, we will vacate the defendant's conviction and remand for a new trial.

*Judgment accordingly.*

FAIN, J., concurs separately.

BROGAN, J., concurs in part and dissents in part.

FAIN, Presiding Judge, concurring.

With respect to Smith's first assignment of error, I would permit Dr. Bergman to testify to rebut the inference, offered by Smith in his opening statement, that otherwise nice persons do not commit this type of offense. However, I agree that the prejudicial effect exceeded the probative value of her testimony concerning the typical modus operandi of pedophiles. Surely, those of us who are not practicing pedophiles can be expected to do nice things for youngsters from time to time. That part of her testimony concerned with the ways in which pedophiles typically ingratiate themselves with their victims and their victims' families ought to have been excluded.

With respect to Smith's second assignment of error, I agree that it should be sustained. Evidence of other bad acts is so dangerously prejudicial that the state ought not to be permitted to introduce evidence in its case-in-chief suggesting that the defendant committed the offense inadvertently in order thereby to be permitted to introduce evidence of similar bad acts in order to rebut that suggestion. Had Smith offered evidence tending to establish that his touching of his victim had been inadvertent, then, in my view, the state would have been justified in introducing evidence of similar bad acts in rebuttal.

Because I agree that both assignments of error should be sustained, I join in this court's judgment of reversal.

BROGAN, Judge, concurring in part and dissenting in part.

I concur for the reason that the trial court committed prejudicial error in admitting the other acts testimony. I do not find that the trial court erred in admitting Dr. Bergman's testimony. I do not believe that an ordinary juror would be conversant with the behavioral patterns of pedophiles. The defendant invited the introduction of this testimony and I would defer to the trial court's determination that the probative value of this testimony did not outweigh its prejudicial impact.