OPINION
David Cullers was found guilty of eight counts of rape by a jury in the Montgomery County Court of Common Pleas. The trial court sentenced Cullers to eight mandatory terms of life imprisonment, some of which were to be served concurrently. As a result, Cullers was sentenced to a total of four consecutive life sentences. He appeals from this conviction, raising five assignments of error.
The state's evidence established the following facts. In compliance with this court's policy to not disclose the identity of victims of sexually oriented offenses, regardless of age, the two victims in this case will be referred to as "Girl" and "Boy" or collectively as "the children." To further protect their identities, their parents will be referred to as "Mother" and "Father." All other relatives will be referred to in generic terms as the children's "aunt" or "uncle." Even though they are referred to as children, Girl and Boy were twenty-three and twenty-two, respectively, at the time of the trial.
Cullers first began babysitting for Mother's two children, Girl and Boy, in 1979 or 1980. At the time, Girl was two or three, and Boy was one or two. Mother worked long hours, and Father, her husband, was an alcoholic who worked during the day and went to bars at night. The rapes for which Cullers was convicted occurred while he was babysitting Girl and Boy, between approximately late 1983 and 1985.
Cullers' rapes of Girl began at approximately the end of 1983 or the beginning of 1984, when Girl was approximately six. Cullers lived with Girl's aunt, who was Mother's sister. Girl went with Cullers to her aunt's house one day during this time period. Her aunt had a male golden retriever, and Cullers commented to Girl that "if [she] would have sex with [her] aunt's dog, if [she] could try, then maybe somehow it would loosen [her] up to where he could penetrate [her] all the way." She told him that she did not want to do that. At that point, Cullers removed his pants and sat in a rocking chair in her aunt's house. He told Girl to remove her clothes and had her straddle him in the rocking chair. He tried to penetrate her vagina but was unable to do so fully. He again commented about her having sex with the dog to loosen her up, and he pushed her down on his penis. She told him that it hurt and that she didn't want to do it anymore. Cullers told her that she could sit on his lap and steer his car around the neighborhood when they were done.
In the summer of 1984, Cullers was babysitting the children at his home. He told Girl, who was seven at the time, to remove her clothes and get on her hands and knees on the floor. He applied Vaseline to her anus and explained that it would help him to penetrate her more easily. He then partially penetrated her anus. Girl testified that it hurt and that she asked him to stop repeatedly. He told her that "[i]f he could do it a little bit more, [they] could go all the way with it."
The third incident occurred at Cullers' home in May 1985, when Girl was eight. She testified that she was completely naked on the couch and that Cullers was kneeling beside the couch. He spread her legs and pushed her feet as far back as possible toward her shoulders. Cullers then performed oral sex on Girl. She testified that he was "forceful" and "very rough." She cried and asked him to stop, but he told her that it should feel good. Despite her telling him that it hurt and asking him to stop, he did not stop until "after he got his kicks out of it."
The final incident about which Girl testified occurred at Cullers' home when she was between the ages of seven and nine. Cullers was lying naked on his bed, and he told her to "suck his penis." He pushed her head up and down on his penis and instructed her to lick and suck it. He told Girl that the longer she did it, the better she would become, telling her, "[Y]ou will give the best blow jobs * * * in the world. You know, when you get older you'll be able to do all that and do it right." Girl testified that, to this day, she cannot stand the smell of sweat because she associates it with him and what he did to her.
During the period in which Cullers was raping Girl, he was also raping Boy. Boy described four incidents of rape by Cullers. These four incidents are discussed in more detail under the first assignment of error. In brief, they were (1) Cullers making Boy perform oral sex on him, (2) Cullers performing anal sex on Boy, (3) Cullers performing oral sex on Boy, and (4) Cullers making Boy perform oral sex on him.
Boy and Girl testified at trial that Cullers had told them that the sexual activity was a secret and had let them do whatever they wanted to buy their silence. Boy testified that they "knew better not to tell," and Girl testified that they were afraid to tell. Cullers was around them all the time as their primary babysitter and a good friend of Mother. Mother told them to do what Cullers said. However, Boy and Girl did tell a friend about the molestations when they were in their early teens. Girl's best friend had been molested and had told Girl about it, which prompted Girl to describe her own molestation to her friend. The friend testified at trial.
Boy and Girl did not tell their parents until 1996, when Girl was nineteen and Boy was eighteen. After an argument between Girl and Boy, Mother told Boy to leave and asked Girl, "What is wrong with you?" Girl responded by shouting, "Mom, I'm probably angry because all the years ago that I was molested." Girl refused to tell her mother at the time who had molested her and left for work. Mother then called Boy and told him to come home. She told Boy what Girl had said, and he confirmed Girl's story and told her that it had been Cullers who molested them. When Girl arrived home from work, her mother, father, and brother were all waiting for her. The family discussed the issue and decided to go to the police when Girl was stronger. Boy and Girl reported the rapes to the police in January of 1998.
When he learned of the allegations against him, Cullers called his sister-in-law, Karen Paschal, whose testimony is more fully discussed in the fourth assignment of error, and told her that he had "never done it to [his] own children." He tried to get her to talk to Girl and Boy for him and promised to go to counseling.
Cullers was indicted for eight counts of rape of a person under thirteen years of age in violation of R.C. 2907.02(A)(1)(b). Each count carried a specification that Cullers had acted with force or threat of force. A jury trial commenced on September 26, 2000. On October 3, 2000, the jury found Cullers guilty on all counts and found that he had used force in committing the acts. Cullers was sentenced on November 15, 2000 to a total of four terms of life imprisonment, to be served consecutively. The trial court also designated Cullers a sexual predator.
Cullers raises five assignments of error.
 THREE OF THE RAPE CONVICTIONS PERTAINING TO [BOY] SHOULD BE REVERSED BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.
Under this assignment of error, Cullers argues that Boy's testimony regarding three of the rapes was insufficient to establish "sexual conduct" as required by R.C. 2907.02(A)(1).
In reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the state had proven the essential elements of the crime beyond a reasonable doubt. See State v. Jenks (1991), 61 Ohio St.3d 259, 273.
Cullers was convicted of eight counts of rape in violation of R.C.2907.02(A)(1)(b), which provides:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
"Sexual conduct" is defined as:
 [V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
R.C. 2907.01(A).
Cullers argues that the state presented insufficient evidence of sexual conduct with regard to three of the four rape counts involving Boy. First, Cullers argues that Boy's testimony regarding Cullers' anal rape of Boy was insufficient to establish sexual conduct because Boy did not state that Cullers inserted anything into Boy's anus. According to Cullers, the term "anal sex" standing alone is not sufficient to establish sexual conduct as required by R.C. 2907.02(A)(1).
We conclude that the state did present sufficient evidence to establish sexual conduct. Boy testified that Cullers "would make [him] go to the bathroom and get the Vaseline. And bring it in there and he would put it on me. And he would perform anal sex on me." In response to the question, "Did it hurt?," Boy testified, "I don't know how far he went back there. He went far enough back there to where I knew what he was doing." Boy testified further that he told Cullers that it hurt, and Cullers stated, "It is okay. It is going to be okay. I'm going to go slow. Once I go, you're going to be fine. It's not going to hurt anymore. Just trust me. Just let me go. Let me do what I am going to do and it's going to be okay." We conclude that there was sufficient evidence for the jury to determine that there was sexual conduct. The jury knew that Boy was twenty-two at the time of trial, and the jury could have reasonably presumed that Boy knew what "anal sex" was. Thus, Boy's use of the term "anal sex," combined with his description of the pain, the use of Vaseline, and Cullers' statements, is sufficient evidence from which a reasonable jury could have determined that there had been anal intercourse.
The other two incidents which Cullers argues were not supported by sufficient evidence involved oral sex. Cullers argues that Boy's testimony in both instances was insufficient to establish sexual conduct because Boy did not testify that Cullers had placed his mouth on Boy's penis or that Boy had placed his mouth on Cullers' penis. In the first incident, Boy testified that Cullers had performed oral sex on Boy. Cullers told Boy that he was going to do to Boy what Boy had done to him (in another incident). Boy testified that Cullers had told him that he "was going to get hard" like Cullers and that Cullers was going to make him feel good. Furthermore, Boy described more fully what he meant by "oral sex" in describing a separate incident:
A. He wanted me to perform oral sex on him. * * *
 Q. Okay. So, we have to tell the jury kind of, instead of using the big word, oral sex on him, we got to kind of break it down for them. So they know, so they can picture it in their mind what happened.
A. Okay.
 Q. * * * Did he ask you to suck? Or did he tell you to suck?
A. Yeah, he did. He like, just —
* * *
A. It was so automatic.
 Q. In the beginning, did he ask you to suck? Did you, did you know to suck?
A. Yes, I did.
Q. Okay. Okay. And to suck what?
A. His penis.
Q. And where would he put his penis?
A. In my mouth.
* * *
Q. How did you move your head?
A. Up and down.
Given Boy's prior description of what he meant by the term "oral sex," together with his description of the incident in question, we conclude that there was sufficient evidence from which a reasonable jury could have concluded that there had been fellatio, which constitutes sexual conduct as defined by 2907.01(A).
In the third incident regarding which Cullers argues insufficiency of the evidence, Cullers made Boy perform oral sex on him. Boy testified that Cullers and some friends were smoking marijuana and that he wanted to join them. To get Cullers to give him marijuana, Boy testified that he "[h]ad to go in the bathroom * * * [a]nd give him oral sex in the bathroom." Cullers sat on the toilet with his pants down, and Boy "did it. [Boy] performed oral sex on him." As above, this description, together with Boy's earlier description of what he meant by the term "oral sex," was sufficient for the jury to conclude that fellatio had occurred.
Our review of Boy's testimony leads us to conclude that the state presented sufficient evidence on all three of the above counts of rape to establish sexual conduct as required by R.C. 2907.02(A)(1)(b).
The first assignment of error is overruled.
 THE CONVICTIONS SHOULD BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE THAT APPELLANT USED "FORCE" OR THE "THREAT OF FORCE."
Under this assignment of error, Cullers argues that the state presented insufficient evidence of force or threat of force with regard to all eight counts of rape.
R.C. 2907.02(A)(1)(b) does not require force. A person who engages in sexual conduct with a child under the age of thirteen commits rape, regardless of whether there is any force at all. See R.C.2907.02(A)(1)(b). However, R.C. 2907.02(B) provides that "[i]f the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life." "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Each of Cullers' eight rape counts included a force specification. Cullers argues that there was no evidence that physical force was used to effectuate the rapes of Girl and Boy.
The Supreme Court of Ohio has held that:
 The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other; as the relation between father and daughter under twelve years of age. With the filial obligation of obedience to the parent, the same degree of force and violence would not be required upon a person of such tender years, as would be required were the parties more nearly equal in age, size and strength.
 State v. Eskridge (1988), 38 Ohio St.3d 56, 58, citing State v. Labus
(1921), 102 Ohio St. 26, 38-39. In Eskridge, a father was convicted of raping his four-year-old daughter with the use of force. The supreme court emphasized several factors in finding force absent explicit threats or displays of force. There was evidence that the victim's father laid her on the bed and removed her clothes and that the victim felt revulsion at what her father did. Furthermore, there was a vast age difference between the four-year-old victim and her twenty-eight-year-old father. See id. The court stated that "[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." Id. at 58-59, citing State v.Martin (1946), 77 Ohio App. 553. Finally, the court found the relationship between child and authority figure to be important, noting that "[t]he youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." Id. at 59, citingState v. Etheridge (1987), 319 N.C. 34, 47, 352 S.E.2d 673, 681.
The supreme court expanded the holding of Eskridge to include people in positions of authority over children other than parents. See State v. Dye
(1998), 82 Ohio St.3d 323, 329. Dye involved a forty-four-year-old babysitter of a nine-year-old boy. The supreme court held that "a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." Id. In Dye, the court found several factors to be particularly persuasive. There was a large age difference and a clear disparity in size between the victim and the defendant. The defendant threatened not to be the victim's friend if the victim told. The victim thought the defendant might hit him. The court found substantial evidence of psychological force in the position of authority that the defendant held over the victim. The defendant was a close friend of the victim's mother, and the victim's mother told him "to mind the defendant, and not to aggravate him." Id. at 328. The court noted that "[w]hen parents tell their children that the caregiver is in charge and that the children should mind the caregiver, that caregiver occupies the same position of authority as the parent traditionally would." Id. at 329. Finally, there was evidence that the defendant had physically manipulated the victim, fondling the victim's genitalia, removing the victim's clothes, and positioning the victim for the rapes, and that the defendant had told the victim to keep the rapes a secret. Id.
The case before us is virtually indistinguishable from Dye. There was a large age and size disparity between Cullers and Girl and Boy. Girl and Boy were six to nine years old at the time of the rapes, while Cullers was in his early twenties. Cullers was a large man, who one witness testified reminded her of Chris Farley. As in Dye, Cullers was a close friend of Mother, and Mother told Girl and Boy to "listen to what David tells you. Be good for David. Whatever he says, you do." Boy testified that "[h]e had to listen. If [Cullers] gave orders, it was to be done. I mean, of course, he was my babysitter. He was in charge." Also as inDye, Cullers physically positioned the children for the rapes. Girl testified that, when Cullers performed oral sex on her, he "pushe[d] [her] feet all the way back, like he ha[d] [her] feet spread as far as possible and back" and that he was "forceful" and "very rough." Cullers always told the children what position to assume and instructed them on how to perform oral sex on him, and Girl testified that he pushed her head "up and down" on his penis. Boy testified that his clothes "came down." Furthermore, Cullers would not stop or allow the children to stop when they asked to do so. Finally, Cullers told Girl and Boy not to tell, and they were afraid to tell. Boy testified that they "knew better not to tell," and Girl testified that she did not tell because she "was scared back then." Cullers was always around due to his friendship with Mother.
Based on the above facts, remarkably similar to those in Dye, we conclude that the state presented sufficient evidence for the jury to conclude that the eight rapes of the children were done with force or threat of force under R.C. 2907.02(B).
The second assignment of error is overruled.
 THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT DENIED THE DEFENSE ATTORNEY'S REQUEST TO WITHDRAW FROM THE CASE SO THAT HE COULD BE A WITNESS FOR THE DEFENSE AND WHEN IT DENIED THE DEFENSE REQUEST TO CALL AN ASSISTANT PROSECUTOR AS A WITNESS.
Under this assignment of error, Cullers argues that the trial court erred in not allowing his defense attorney to withdraw as counsel so that he could testify and in not allowing Cullers to call the assistant prosecutor as a witness. The basis of this argument is a document that defense counsel alleged that the assistant prosecutor had shown him and that he was intended to receive. The document, which defense counsel referred to as a bill of particulars, allegedly detailed incidents occurring in 1984, 1985, and 1986. In previous statements and police reports, Girl and Boy had stated that the incidents had occurred in 1981, 1982, and 1983. Defense counsel pointed out the discrepancy to the assistant prosecutor. When defense counsel attempted to obtain this document from the assistant prosecutor, he was told that the document did not exist. Thus, defense counsel requested permission to withdraw as counsel and to testify regarding the missing document. The trial court denied the request in a written decision, stating:
 The document to which [defense counsel] refers appears, at best, to be the prosecutor's work product in the form of handwritten notes on matters that might be included in a bill of particulars. Further, the subject matter of the document would be neither evidence nor direct testimony. Defense counsel will have every opportunity to cross-examine the complaining witnesses in this case about the events, places and times in question and the Court sees no reason why either [defense counsel] or [the assistant prosecutor] would be properly called as witnesses in this case.
DR 5-102(A) states that:
 [I]f, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).
None of the circumstances in DR 5-101(B) apply, and they are irrelevant in any case as the trial court did not permit defense counsel to testify.
When presented with a situation such as that described above, a trial court must first determine the admissibility of counsel's testimony under the rules of evidence. See 155 N. High, Ltd. v. Cincinnati Ins. Co. (1995), 72 Ohio St.3d 423, 427. Only if the court finds that the evidence is admissible must it determine whether the attorney should be required to withdraw. See id. at 427-28. We review the trial court's decision for abuse of discretion. See id. at 426.
In the present case, the trial court found that defense counsel's proffered testimony would not be admissible. We conclude that the trial court did not abuse its discretion in doing so. Girl and Boy testified regarding events in 1984, 1985, and 1986. If defense counsel wished to impeach their testimony by showing that police reports and prior written statements referred only to incidents in 1981, 1982, and 1983, he could have done so. There was no reason for him to testify regarding a phantom document that allegedly said exactly the same thing Girl and Boy said on the stand. In addition to the fact that we cannot see how the trial court's refusal to admit such testimony prejudiced Cullers, we believe that allowing defense counsel to testify would have been, as the state argues, cumulative. As allowing defense counsel to testify was not the only way, the best way, or even a particularly effective way to impeach the credibility of Girl and Boy, we cannot find that the trial court erred in refusing to allow defense counsel to withdraw from the case to testify or in refusing to allow defense counsel to call the assistant prosecutor as a witness.
The third assignment of error is overruled.
 THE TRIAL COURT DENIED APPELLANT A FAIR TRIAL AS GUARANTEED BY THE STATE AND FEDERAL CONSTITUTIONS WHEN IT FAILED TO DECLARE A MISTRIAL AFTER THE JURY HEARD EVIDENCE ABOUT OTHER OFFENSES NOT CHARGED IN THE INDICTMENT.
Under this assignment of error, Cullers argues that the trial court erred in refusing to grant a mistrial based on three incidents involving evidence of or allusion to "other acts" for which Cullers was not charged.
The first incident involved Girl's testimony that, while she was lying naked on the bed in Cullers' home, Cullers called Boy into the room. Cullers then told Boy to remove his clothes and get on top of Girl. Girl testified that she thought Cullers wanted her to have sex with Boy, but, after the children kissed, Boy protested and left the room. Boy testified to the same facts. The trial court allowed the evidence to come in, stating, "If the time frame is appropriate, and it shows an atmosphere, etc., as to the defendant, * * * I would probably overrule the objection."
In the second incident, Boy stated that Cullers molested him "all the time." The trial court sustained defense counsel's objection and struck the testimony. Furthermore, the trial court instructed the jury to disregard the statement. The third incident was similar. Girl testified that she hated herself "for not telling sooner because of all of the other — I don't know if I can say this. All the other people that he's done it to." Again, the trial court sustained the objection, ordered the comment stricken from the record, and instructed the jury that "there's no evidence in this case about any actions with other, any other people other than the indicted charges in this case. The last comment is to be disregarded totally." The trial court denied defense counsel's motion for a mistrial in both cases.
We conclude that the trial court did not err in denying defense counsel's motion for a mistrial due to the second and third incidents. The trial court sustained defense counsel's objections, ordered the comments stricken from the record, and told the jury to disregard the statements. The jury is presumed to have followed the trial court's instructions. See State v. Loza (1994), 71 Ohio St.3d 61, 75. The trial court's instructions to the jury were adequate, and a mistrial was not required for these two isolated incidents. Therefore, we will address only the first incident, in which Boy and Girl testified that Cullers attempted to get them to have sex with each other.
Initially, we cannot find any evidence in the record that Cullers' attorney requested a mistrial as a result of the testimony that Cullers had attempted to make the children have sex with each other. There was testimony on this incident twice, once during Girl's testimony and once during Boy's testimony, and the defense counsel did not ask for a mistrial either time. Therefore, this argument was waived. We will assume for the purpose of fully disposing of the issues in this appeal, however, that Cullers intended to argue that the trial court committed prejudicial error in admitting this evidence.
The admission of "other acts" testimony in criminal cases is governed by Evid.R. 404(B) and R.C. 2945.59. Evid.R. 404(B) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
R.C. 2945.59 states:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
The state argues that the testimony was admissible for the purpose of showing "a scheme, plan or system with regard to identity."
Evidence of a scheme, plan, or system is relevant in two situations. The first is where the other acts evidence forms "part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment." State v. Curry (1975), 43 Ohio St.2d 66, 73. Such evidence is admissible only when it is "virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts." Id. The second situation is when the identity of the perpetrator is at issue. The supreme court noted inCurry that:
 One recognized method of establishing that the accused committed the offense set forth in the indictment is to show that he has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes.
 Id. This court expounded on Curry as follows:
 Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime. In that event other act evidence tends to show the defendant's identity as the perpetrator by showing that he committed crimes of a similar methodology within a period of time reasonably near to the offense on trial, which itself would constitute probative evidence of the probability that the same person, whoever he or she may be, committed both crimes.
 State v. Smith (1992), 84 Ohio App.3d 647, 666.
In Smith, the defendant was charged with two counts of rape of a person under thirteen. One of the counts involved a boy's allegations that the defendant had engaged in sexual contact with the boy while the boy was sleeping with the boy's brother at the defendant's home. The defendant alleged that there had been no sexual contact and that what the boy had felt was simply his brother bumping into him while moving around in his sleep. We held that this was not sufficient to raise a question of identity because it essentially suggested that the acts themselves had not occurred. See id. at 667. Thus, we found that the fact of the crime was not open and evident but was clearly disputed. In that case, if the crimes were found to have taken place, there was no question regarding the identity of the perpetrator. See id.
In the present case, we are presented with a more substantial question of identity. Cullers did argue at the trial court that the offenses did not occur at all. However, he argued in the alternative that, if they did occur, they were committed by an uncle of the children. Cullers' attorney questioned several witnesses regarding the possibility that the rapes, if they had been committed at all, had been committed by the children's uncle. Initially, defense counsel questioned Mother about whether her brother had ever babysat for the children during the time of the rapes. Next, he asked Boy whether his uncle had ever molested him. Defense counsel then elicited testimony from a woman who had lived with the uncle that her daughter had claimed that the uncle had molested her. Finally, counsel argued in closing arguments as follows:
 And then we have in rebuttal, and we also have in the case of [the uncle], babysitter of [Girl] and [Boy], accused of molesting another child. A relative of [Girl] and [Boy].
 Maybe where they, this is important, is maybe the detective should have examined the issue of [the uncle], babysitter of [Girl]-of [Girl] and [Boy].
Although identity is clearly a more substantial issue in this case than in Smith, we cannot find that identity was truly at issue. Cullers made a weak attempt at arguing that Girl and Boy had been molested by their uncle rather than by him, but his defense was limited for the most part to his argument that the children were lying. Furthermore, as in Smith, it is clear that if the alleged crimes occurred, Cullers was the perpetrator. Girl and Boy described events occurring almost entirely in Cullers' home, while Cullers was babysitting them. An uncle, while he could have molested them, could not likely have done so in Cullers' home while Cullers was babysitting the children. Furthermore, the testimony of Girl and Boy that Cullers attempted to get them to have sex with each other came in before Cullers had made any argument that their uncle was the molester. As identity was not truly at issue in the case, the testimony regarding an act for which Cullers was not charged could not come in to show identity. Therefore, we find that the trial court erred in admitting the testimony in question.
However, we conclude that the trial court's error in admitting other acts evidence was harmless given the quantity of evidence against Cullers. Boy and Girl testified in detail to all of the eight rapes for which Cullers was indicted. Furthermore, their testimony was corroborated by the testimony of Karen Paschal, Cullers' sister-in-law, whom Cullers called when he found out about Girl's and Boy's allegations. Cullers told Paschal that she was not "going to believe what [Girl] and [Boy] [were] saying about [him]". Paschal testified that she could tell he was upset. She asked him what he was going to do. He asked what she thought, and she told him that she believed Girl and Boy. Cullers wanted her to get Girl and Boy to write him a letter telling him to stay away from them rather than go to the police. He told Paschal that he would get counseling and stated, "I never done it to my own children." Furthermore, Paschal testified that Cullers never denied Girl's and Boy's allegations, even though she gave him ample opportunity to do so. Therefore, due to the abundance of evidence regarding the rapes and Cullers' tacit admission to Paschal, we find that any error in the admission of other acts testimony was harmless.
The fourth assignment of error is overruled.
 THE APPELLANT'S CONVICTION SHOULD BE DISMISSED SINCE HIS INDICTMENT WAS NEVER AMENDED AND THE INDICTMENT COVERED A PERIOD OF TIME THAT THE APPELLANT WAS A JUVENILE.
Under this assignment of error, Cullers argues that the trial court never amended the indictment to remove the period of time (January 1, 1981 to April 16, 1981) when Cullers was still a juvenile; therefore, his conviction was inappropriate and must be reversed. The state contends that the trial court did amend the indictment and that Cullers was not prejudiced by the amendment.
Crim.R. 7(D) provides:
 The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made * * *.
In this case, the trial court did amend the indictment to remove the time period before Cullers was eighteen. The court amended the indictment after the jury began deliberating in the case. The amendment conformed to Crim.R. 7(D) as no change was made to the name or identity of the crime charged. Furthermore, Cullers was not prejudiced by the amendment. All the testimony involved events following Cullers' eighteenth birthday. The state made clear to the jury that the case was only concerned with events occurring after that date:
 [Cullers] started babysitting when he was 15, 16 years old. But the time we are talking about is the time he turned 18, because that is why we're here in Common Pleas Court.
* * *
 * * * What the state needs to show to you is that that defendant, between the dates, the time actually says January 1st, of 1981, to January 1st, of 1986. However, it should actually be April 17th, of `81 because that's the date the defendant turned 18. And that's the date he turned an adult. So, it is truly between April 17th, of `81, and December 31st, 1986 * * *.
The amendment only narrowed the time period in the indictment and can therefore not be said to have prejudiced or misled Cullers.
The fifth assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.