The STATE of Ohio, Appellee,

v.

CLEMONS, Appellant.

[Cite as *State v. Clemons* (1994), 94 Ohio App.3d 701.]

Court of Appeals of Ohio,
Butler County.

No. CA93–09–189.

Decided May 2, 1994.

*John F. Holcomb,* Butler County Prosecuting Attorney, and *Robert N. Piper III,* Assistant Prosecuting Attorney, for appellee.

*Fred Miller,* for appellant.

WILLIAM W. YOUNG, Judge.

Defendant-appellant, Otis Clemons, appeals his conviction on one count of gross sexual imposition and one count of rape in violation of R.C. 2907.05(A)(4) and R.C. 2907.02 (A)(1)(b), respectively. Clemons sets forth five assignments of error, which read as follows:

"Assignment of Error No. 1:

"The trial court erred to the prejudice of defendant-appellant when it permitted the state to introduce evidence regarding appellant's sexual proclivities.

"Assignment of Error No. 2:

"The trial court erred to the prejudice of defendant-appellant when it conducted certain proceedings outside his presence.

"Assignment of Error No. 3:

"The trial court erred to the prejudice of defendant-appellant when it permitted the prosecutor to inject his own testimony in final arguments.

"Assignment of Error No. 4:

"The trial court erred to the prejudice of defendant-appellant when it permitted the child to testify regarding punishment inflicted upon her by the defendant.

"Assignment of Error No. 5:

"The cumulative error in this case necessitates a new trial."

The charges against Clemons arose from two separate incidents involving his girlfriend's daughter, G.B., who was between seven and eight years old when the incidents occurred. Clemons was living with his girlfriend and G.B. at the time.

G.B. testified that one morning Clemons was brushing her hair while she sat on his lap. His zipper was down, and he put his hands on her waist, tickled her, and rubbed the child back and forth on his lap. She stated that she could feel his

penis on her back, and that his breathing changed, like he was "huffing." According to G.B., similar incidents occurred on four other occasions.

G.B. testified that in another instance Clemons peeled a banana and told her to close her eyes and put the banana in her mouth. Actually, it was his penis he put in her mouth, although she never saw it. She knew what it was because it tasted like skin and was larger than a finger. The object also "had hair on it."

Clemons was indicted on July 8, 1993 on one count of gross sexual imposition and one count of rape. The matter was tried before a jury on August 31 and September 1, 1993. Clemons was convicted on both charges and sentenced to consecutive terms of imprisonment of two years and ten to twenty-five years.

Under Clemons' first assignment of error, he sets forth two issues for review. He argues that the trial court should have excluded evidence of "other acts" because there was no "inextricable link" between that other act evidence and the charged crimes. He also argues that the state improperly argued to the jury that he had committed other "bad acts" when there was no direct correlation between the other acts and the underlying crimes.

The prosecution elicited the other acts evidence through the testimony of G.B.'s mother, the state's only other witness. The state called her to testify about Clemons' explanation to her concerning the hair brushing incident. She stated that Clemons brushed G.B.'s hair every morning and saw to it that she was properly dressed for school. That morning, G.B. woke Clemons on the couch, brought him the brush and sat on his lap. Clemons told this witness that G.B. was feeling his morning erection while he brushed her hair; his pants were unzipped because he had recently gained weight and needed to relieve his stomach.

On redirect examination, the state asked its witness if Clemons had told her that G.B. had felt his erection. She responded, "yes." On recross-examination, defense counsel asked:

"Q. [by defense counsel] He never indicated to you that he was sexually aroused by [G.B. sitting on his lap] in any way?

"A. [by G.B.'s mother] No."

On further redirect, after the court declared the state's witness to be hostile, the state proceeded as if on cross-examination, and the following exchange occurred:

"Q. Do you remember being asked about Mitch's [Clemons'] arousal? Do you remember being asked that?

"A. Right, yes.

"Q. And you indicated what?

"*A.* That, no, he didn't say that that's why he was aroused, that he wasn't aroused because of that.

"*Q.* In regard to Mr. Clemons' ability to become aroused or not become aroused, you had conversations with him about that, did you not?

"*A.* What do you mean?

"*Q.* Well, for example, didn't you at one time tell him that he needed help?

"*A.* No, I didn't say that.

"*Q.* O.K. Do you remember testifying at the grand jury?

"*A.* Yes, I do.

"*Q.* O.K. Do you remember being asked about pornographic movies?

"*A.·* Yes.

"*Mr. Howard* [defense counsel]: Objection.

"*The Court:* Overruled.

"*Q.* Do you remember being asked about that? Would it help you to refresh your previous testimony?

"*A.* I know what I said, I know what I said.

"*Q.* O.K. Well, when you were asked the question about him having a problem masturbating at home and watching pornographic movies and you were asked, 'Is that true,' what was your response?

"*A.* You said also that—and I said that he had a problem and I said yes to that.

"*Q.* O.K. You were asked—you said you were—would it help you to refresh—to see this, would it refresh your memory?

"*A.* I never said that he needed help. Those words never came out of my mouth.

"*Q.* O.K. You're correct, you did indicate it was a problem. You were asked a question, 'While masturbating at home and you were finding things around the house while he's watching pornographic movies and you told him he had a problem,' and the question was, 'Is that true,' and your answer was that it was what?

"*A.* I said yes.

"*Q.* Thank you."

Defense counsel objected that this line of questioning was irrelevant and prejudicial. The state argued that the defense opened the door by questioning the witness about the state of Clemons' sexual arousal. The trial court adopted

the state's reasoning, saying only that "the other testimony would either corroborate or show the conduct or what the intent was of the defendant."

During final argument, the prosecution stated, among other things: "Now what the law does provide is that you can consider evidence of moral degeneracy and sexual perversion." Defense counsel again objected, arguing that the prosecutor's statements were not included in the jury instructions and were not an accurate reflection of the law. His objection was overruled; the trial court told the state at sidebar to make clear that the law allows such evidence but that it is not part of the jury instructions.

The state then told the jury that although the jury instructions did not contain anything about sexual degeneracy, the jury could "consider that for his purpose and his motive when you hear her describe being put on his lap and tickling and going back and forth."

This court must determine whether the testimony concerning Clemons' other sexual acts was admissible and whether it could have contributed to his conviction. The legislature has sharply restricted the admissibility of evidence of both the victim's and the defendant's sexual activity in rape and gross sexual imposition cases. See *State v. Lewis* (1990), 66 Ohio App.3d 37, 40, 583 N.E.2d 404, 406. R.C. 2907.05(D), pertaining to gross sexual imposition, and R.C. 2907.02(D), which pertains to rape, both provide in pertinent part:

"Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual history with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, *and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.*" (Emphasis added.)

R.C. 2907.02(D) and 2907.05(D), often referred to as "rape shield laws," represent the legislature's recognition that evidence of specific instances of a defendant's sexual history or activity may be particularly inflammatory and prejudicial. Unlike the balance provided in Evid.R. 403, requiring that evidence must be excluded where it is *substantially* outweighed by its prejudicial value, the last sentences of R.C. 2907.02(D) and 2907.05(D) provide simply for weighing the probative value of the evidence against its prejudicial effect. See Weissenberger, Ohio Evidence (1993) 27, Section 404.7. The legislature's concern that the court carefully weigh the competing interests involved where one party attempts to introduce evidence of a victim's or a defendant's sexual proclivities is

reflected in R.C. 2907.02(E) and 2907.05(E), which require the trial court to hold a hearing in chambers to resolve the admissibility of such evidence.

■ Where evidence of the defendant's sexual activity does not involve the origin of semen, pregnancy or disease, or the defendant's past sexual activity with the victim, such evidence may come in only if it is admissible against the defendant under R.C. 2945.59, and only to the extent that its inflammatory nature does not outweigh its probative value. R.C. 2945.59 reads as follows:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with, or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Evid.R. 404(B) also provides that evidence of other acts is not admissible to prove the character of a person to show that the person acted in conformity with his character on a particular occasion. The underlying policies of Evid.R. 404(B) and R.C. 2945.59 are essentially the same, and the Ohio Supreme Court has suggested that the two provisions are parallel and should be read in conjunction with one another. See *State v. Broom* (1988), 40 Ohio St.3d 277, 281–282, 533 N.E.2d 682, 689–690.

■ R.C. 2945.59 and Evid.R. 404(B) are both exceptions to the common-law rule that evidence of other acts is inadmissible to prove any element in the crime for which a defendant stands trial. *State v. Hector* (1969), 19 Ohio St.2d 167, 48 O.O.2d 199, 249 N.E.2d 912. As such, both the rule and the statute must be strictly construed against admissibility. *State v. Broom, supra,* 40 Ohio St.3d at 281–282, 533 N.E.2d at 689–690.

■ The state argues that the trial court properly allowed the evidence of Clemons' "problem" as evidence of other acts tending to prove motive or intent. The state also contends that this evidence "became extremely relevant after counsel for the defense questioned appellant's arousal capacity." The state, quoting *State v. Shively* (App.1960), 86 Ohio Law Abs. 71, 76, 176 N.E.2d 436, 439, claims this other acts evidence was admissible "to show a course of lascivious conduct, degeneracy, and sexual perversion." We find the state's arguments unpersuasive.

■ Evidence of a defendant's prior sexual acts is not admissible if they are too remote, and not closely related in nature, time, and place to the offense

charged. See *State v. Strobel* (1988), 51 Ohio App.3d 31, 38, 554 N.E.2d 916, 923–924. To be relevant on the issue of motive or intent, other act testimony " 'must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question.' " *State v. Gardner* (1979), 59 Ohio St.2d 14, 20, 13 O.O.3d 8, 11–12, 391 N.E.2d 337, 342, quoting *State v. Burson* (1974), 38 Ohio St.2d 157, 158–159, 67 O.O.2d 174, 174–176, 311 N.E.2d 526, 528–529. Such evidence is never admissible when its only purpose is to establish that the defendant committed the act alleged in the indictment. *State v. Flonnory* (1972), 31 Ohio St.2d 124, 60 O.O.2d 95, 285 N.E.2d 726.

The state cites *State v. Jackson* (1948), 82 Ohio App. 318, 38 O.O. 23, 81 N.E.2d 546, as authority for the admissibility of such testimony. That court stated at 322, 38 O.O. at 25, 81 N.E.2d at 548;

"The [other acts] evidence is not at all admissible for the purpose of raising a presumption of guilt on the hypothesis that a man who commits one crime will probably commit another, but for the sole purpose of showing a passion, an emotion, a degeneracy, *of exactly the same type prompting the commission of the offense laid in the indictment.*" (Emphasis added.)

In *Jackson,* the defendant appealed his conviction on two counts of incest involving one of his daughters. He claimed the trial court erred in allowing two other daughters to testify about his prior sexual conduct with them. The *Jackson* court affirmed the defendant's conviction, concluding that the defendant's different acts of incest are "so related to the offense for which the defendant is on trial that they have a *logical connection* therewith and may reasonably disclose a motive." (Emphasis added.) *Id.* at 323, 38 O.O. at 25, 81 N.E.2d at 549.

Exceptions to the general rule that "other acts" evidence is inadmissible exist not *because* those acts prove that the defendant is crime prone, but *in spite of* such an inference, on the theory that the circumstances of the other acts constitute *substantial probative* evidence of guilt of the offense charged. See *State v. Hector, supra,* 19 Ohio St.2d 167, 48 O.O.2d 199, 249 N.E.2d 912, paragraph two of the syllabus. The cases cited by the state support the proposition that other acts evidence is inadmissible unless that evidence is closely related in nature, time, and place to the offense charged.

Recent cases addressing the introduction of specific instances of a defendant's sexual acts offer this court the clearest guidance, since they were decided under the rape shield provisions of R.C. 2907.05(D) and 2907.02(D).

In *State v. Smith* (1992), 84 Ohio App.3d 647, 617 N.E.2d 1160, the court held that evidence of the defendant's other acts of sexual activity were inadmissible

under Evid.R. 404(B) and R.C. 2945.59. In *Smith*, the defendant, a teacher, was convicted of two counts of gross sexual imposition for having sexual contact with two boys under thirteen years of age. At trial, the state called a third boy, who testified that on two occasions the defendant had pulled him on his lap and that he could feel the defendant's erection.

The *Smith* court rejected the state's contention that the evidence could come in to prove the defendant's motive or intent, or as proof of his scheme, plan, or system. The court noted that a defendant's requisite motive and intent under R.C. 2907.05 is sexual gratification. That element was apparent from the charges against the defendant and was not a material issue. *Id.*

The court also noted that when the other acts are factually and chronologically separate occurrences, they are generally not inextricably related to the alleged acts in the indictment. *Id.,* 84 Ohio App.3d at 667, 617 N.E.2d at 1173–1174. The acts which the young witness testified about occurred within three months of the charged offenses, but the court concluded that they "were wholly separate from the offenses charged, factually and chronologically. They were not a part of the immediate background of the crimes alleged." *Id.* The court concluded that the only remaining purpose of introducing the witnesses' testimony was to show that the defendant committed the offenses charged in the indictment.

In *State v. Price* (1992), 80 Ohio App.3d 35, 608 N.E.2d 818, the defendant was charged with raping one of his stepdaughters. The trial court allowed the defendant's stepson to testify that he had seen the defendant having sexual relations with an older stepdaughter. The appeals court reversed the trial court, holding that this other acts evidence was inadmissible.

The court stated that evidence of the defendant's acts with the victim's sister was not sufficiently connected to the charge that he raped the victim. *Id.* at 41, 608 N.E.2d at 822. Proof of one act does not incidentally involve the other, and such evidence does not explain the circumstances behind the acts for which the defendant was convicted. *Id.*

The Ohio Third District Court of Appeals has held that testimony regarding prior sexual acts may be admissible where a defendant effectively "waives" the statutory limitations against such evidence by "opening the door" to the issue of his or her past sexual activities. *State v. Banks* (1991), 71 Ohio App.3d 214, 593 N.E.2d 346.

In *Banks*, the defendant was accused of rape and gross sexual imposition against his daughter. He testified on direct examination, in three separate instances, that he had never had sexual contact with any child under eighteen years of age. On cross-examination, he specifically denied any sexual activity with two children who subsequently testified. The defendant himself also called

a witness who testified on direct examination that she never noticed any perversity about the defendant and that she did not know him to engage in the type of conduct he was charged with.

On rebuttal, the prosecution called two young witnesses who testified about prior sex acts with the defendant. The defendant contended that this testimony was prohibited under R.C. 2907.02(D), 2907.05(D), and Evid.R. 404(B). The court stated that the testimony could not be justified as proof of any of the enumerated factors contained in R.C. 2945.59 or Evid.R. 404(B). The court held, however, that the testimony was admissible because the defendant, in his case in chief, interjected the issue of his prior sexual activities.

In *State v. Smith, supra,* 84 Ohio App.3d 647, 617 N.E.2d 1160, the state made a similar argument that the defendant opened the door to other sexual acts evidence. The prosecution claimed that the defendant had asserted a theory of accident when he told one of the state's witnesses, the mother of one of the victims, that while he was asleep with her son his "hand could have went anywhere * * *." *Id.* at 664–665, 617 N.E.2d at 1172. The court stated that this testimony was insufficient to permit the state to rebut it with the testimony of another state witness concerning other acts by the defendant. *Id.* at 665, 617 N.E.2d at 1172–1173.

In this case, the testimony about Clemons' other sexual acts could only come in if it was so closely or logically connected to the acts for which it was charged that it tended to show the existence of one of the proper bases for such evidence under R.C. 2945.59 and Evid.R. 404(B). After careful consideration, this court can only conclude that the trial court abused its discretion in allowing the evidence of Clemons' "problem" with masturbation to come before the jury. Clemons' alleged "problem" is not substantial proof of, and does not tend to show, any of the enumerated purposes for which such evidence is admissible under R.C. 2945.59 or Evid.R. 404(B).

The state came forward with nothing that "inextricably links" or closely connects Clemons' alleged acts of masturbating while watching pornographic movies to the charges involving G.B. For example, there is no evidence about when these acts took place. There is no evidence that the films Clemons watched while masturbating involved child pornography. There is no indication that children were present while Clemons masturbated. In other words, there is no logical connection between this other acts evidence and the charges against Clemons other than that they involve arguably deviant sexual activity. This is not sufficient.

The state's inability to adequately link the other acts evidence to the acts charged against Clemons in his indictment precludes that evidence from coming in as proof of his intent or motive. The state must not simply rely on the

inference that since Clemons' past sexual acts suggest a "course of lascivious conduct, degeneracy, and sexual perversion, those acts offer competent evidence tending to show that Clemons had the motive or intent to commit the heinous crimes he was charged with. The connection is simply too tenuous. If the basis upon which other act evidence is admissible under R.C. 2945.59 and Evid.R. 404(B) is interpreted too loosely, there is no limit to what other acts evidence is admissible.

■ This court also cannot agree with the state's proposition that Clemons "opened the door" to this evidence so that it could come in to show absence of mistake. In *Banks, supra*, where the court held that the defendant "opened the door" to such other acts evidence, the defendant took the stand and repeatedly testified that he would never have had sexual contact with a member of his family. That defendant also called a character witness who testified that she was unaware of any perversities in the defendant.

In the case at bar, Clemons never took the stand or introduced any character witnesses. The only question asked of the state's witness on recross-examination was whether Clemons indicated to the state's witness whether he was sexually aroused by the child sitting on his lap. This question was insufficient to permit the state to introduce the witness's previous statement to a police investigator that Clemons had a masturbation "problem." If Clemons had called his girlfriend to testify about his explanation to her then our decision might be different, but this is not the case.

■ The assistant prosecuting attorney was determined to introduce the statement of the victim's mother, made during the initial investigation, that Clemons had a "problem" with masturbation. That testimony was inflammatory and this court is convinced the assistant prosecutor elicited that testimony to show that Clemons had a tendency to engage in the types of crimes for which he was charged. The assistant prosecutor succeeded in introducing this testimony because the trial court failed to weigh the inflammatory nature of the evidence against its probative value. Instead, the lower court adopted the state's theory of admissibility. The trial court compounded its error when it allowed the assistant prosecutor to instruct the jury that it could properly consider the evidence of Clemons' sexual deviance. We note that the trial court gave no limiting instructions regarding this testimony.

This court cannot say in good conscience that there is no reasonable possibility that this inadmissible testimony did not contribute to Clemons' conviction. See *State v. Bayless* (1976), 48 Ohio St.2d 73, 106, 2 O.O.3d 249, 267, 357 N.E.2d 1035, 1055–1056, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155. Unlike *State v. Eubank* (1979), 60 Ohio St.2d 183, 14 O.O.3d 416,

398 N.E.2d 567, where the Supreme Court held that the introduction of the testimony regarding past instances of the defendant's sexual acts was harmless error, this cause was tried before a jury, not a judge. See *State v. Thompson* (1981), 66 Ohio St.2d 496, 20 O.O.3d 411, 422 N.E.2d 855 (admission of victim's testimony concerning subsequent incidents of sexual contact with defendant was not harmless error where defendant was tried before a jury and not a judge).

Clemons' conviction depended entirely on G.B.'s credibility. There is a real possibility that her testimony may have been improperly bolstered by the other acts evidence.

This is a particularly difficult and painful decision in light of the serious nature of the charges and the trauma a new trial is certain to cause G.B. and her family. However, the elicited testimony concerning specific instances of Clemons' sexual activity was highly inflammatory and not logically or closely related to any proper purpose. This error was not harmless beyond a reasonable doubt. Clemons' first assignment of error is sustained and this cause must be remanded for a new trial. Since Clemons will receive a new trial based on his first assignment of error, his remaining four assignments of error are rendered moot.

*Judgment reversed*
*and cause remanded.*

WALSH, P.J., and KOEHLER, J., concur.