JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant the State of Ohio appeals from the order of the trial court that granted a new trial to defendant-appellee David Sims after he was convicted by a jury on charges of rape, kidnapping and intimidation.
 {¶ 2} The state argues the trial court lacked a sufficient basis upon which to grant Sims' motion for a new trial. Related to that argument, the state additionally asserts the trial court made an improper decision to exclude "other acts" evidence it deemed unduly prejudicial to the defense.
 {¶ 3} This court has reviewed the record and cannot agree with the state's argument. Consequently, the trial court's decisions are affirmed.
 {¶ 4} This case resulted when on November 19, 2003 the Cuyahoga County Grand Jury issued an indictment against Sims that indicated he had committed the three aforementioned crimes upon a sixteen-year old female victim on "August 16, 2003." Sims pleaded not guilty and received assigned counsel to represent him.
 {¶ 5} According to the testimony given at Sims' trial, the indictment resulted from an incident that was alleged by the victim to have occurred at the fast-food restaurant at which they both worked. The victim had been hired by the restaurant in April, 2003 as a part-time employee. On Saturday, August 23, 2003, when she was leaving work in the afternoon, the victim made her first report of the incident.
 {¶ 6} The victim, who at that time was working on the day shift, told her female assistant manager, Brenda Gaines, that she was quitting. When pressed by Gaines for a reason for this action, the victim stated that on a night recently when she and Sims worked the closing shift, he had made an unwanted sexual advance toward her.
 {¶ 7} She told Gaines it had been on the previous weekend, the Saturday night of August 16, 2003. The victim described the incident to Gaines in these terms: Sims had "pushed [the victim] into the bathroom, pushed her against the wall, and held her arms, put his hands down her pants, and then inserted two of his fingers inside her."
 {¶ 8} Gaines reassured the victim that something would be done about the incident, then telephoned the store manager, Joseph Hopkins. Hopkins, in turn, notified the company offices; one of the supervisors, Richard Fox, received the message the following morning. Fox instructed Hopkins to obtain statements from all of his employees regarding any incidents of a sexual nature, and told him to suspend Sims from working pending the company's investigation.
 {¶ 9} Although by that time Sims had been working the day shift with the victim for nearly a week, as a result of this order, Sims did not work after August 24, 2003. The company ultimately terminated his employment.
 {¶ 10} On August 28, 2003 the victim reported the incident to the Solon Police Department. In her written statement, she set forth the date of the incident as "August 16, 2003." She indicated the encounter with Sims had taken place just before she left that night with one of her female coworkers. Thereafter, the case was assigned to Detective David Perchinske.
 {¶ 11} On September 2, 2003 Perchinske spoke to the victim about the incident. She told him she had broken free from Sims by "knocking his arm away;" she further stated she had failed to tell anyone about the incident at the time because she was the only female working that night and because she feared "retaliation" from Sims if she reported it.
 {¶ 12} Perchinske then interviewed the other restaurant employees. On September 26, 2003, Perchinske interviewed Sims, who made oral statements to Perchinske in which he denied having physical contact with any of his female coworkers, stated some of his comments of a sexual nature must have been "misconstrued," and indicated his willingness to "take a voice stress analyzer test" to prove the truth of his statements. Sims further informed Perchinske that he had not worked on the night of August 16, 2003.
 {¶ 13} As a result of Sims' declaration that he had not worked on August 16, Perchinske returned to the restaurant to check its veracity and discovered that Sims had been correct. Perchinske returned to the victim with the information. The victim at that time indicated she could not actually remember the exact date of the incident, but remembered it was a night after a payday during which she was the only female worker.
 {¶ 14} Thus, Perchinske investigated further; he discovered that August 2, 2003 was the only night the victim had worked with Sims and with other male employees before she reported the incident. On November 19, 2003, however, when the indictment against Sims was issued, it set forth the date of the offenses, viz., rape, kidnapping and intimidation, as "August 16, 2003."
 {¶ 15} On January 6, 2004 the state filed its Bill of Particulars in this case. Therein, the date of the offenses was set forth as "August 2, 2003."
 {¶ 16} On January 8, 2004 the first pretrial hearing was held. Defense counsel apparently pointed out the date discrepancy between the date of the incident which was set forth on the indictment versus the date listed on the Bill of Particulars. From the record, it can be gleaned that, in response, the prosecutor requested the trial court to amend the indictment to reflect the date of the offenses as "August 2, 2003." The trial court granted the request over defense counsel's objection, but failed to issue a journal entry to that effect.
 {¶ 17} On April 2, 2004 the prosecutor filed a notice of his intent to use evidence at Sims' trial "pursuant to Evidence Rule 404(B)." The prosecutor argued that certain lewd comments and "unwanted and offensive sexual advances" which Sims had made to his female coworkers prior to the date of the incident were relevant to his guilt of the crimes of rape, kidnapping and intimidation.
 {¶ 18} The defense responded to this notice with a motion in limine. The defense argued the evidence the state intended to use contravened Evid.R. 404(B), was irrelevant, and, further, was unduly prejudicial. The court took up the matter before the commencement of Sims' jury trial. After some consideration, the trial court granted Sims' motion in limine. The prosecutor thus was precluded from mentioning any allegations made against Sims of workplace sexual harassment.
 {¶ 19} Nevertheless, the record reflects the prosecutor subsequently did the following: 1) asked the potential jurors during voir dire if anyone had been "harassed in a workplace"; 2) began his opening statement to the jurors by informing them they were "going to hear about a situation which originally started out as sexual harassment"; 3) asked the victim on direct examination whether she had witnessed Sims making vulgar comments to anyone else at work; and, 4) repeated the same question immediately after the trial court warned him to "stay away from that."
 {¶ 20} After the victim's testimony, the prosecutor requested the trial court to revisit its preliminary decision with respect to Sims' motion in limine. The trial court reiterated the prosecutor was precluded from introducing evidence of any workplace sexual harassment allegations against Sims.
 {¶ 21} The prosecutor presented his remaining witnesses under that proscription. After the victim's mother and stepfather testified, the next witness for the state was Brenda Gaines. The record reflects the prosecutor took the following actions during Gaines' testimony: 1) asked her on direct examination the names of the female employees from whom she sought written statements after speaking to Hopkins; 2) asked Gaines if Sims had ever made statements to her about his female coworkers; 3) repeated that question immediately after a bench conference regarding defense counsel's objection, which the trial court sustained; and, 4) on redirect examination, again asked her if Hopkins had instructed her to obtain written statements from Sims' female coworkers.
 {¶ 22} At this point of the trial, the trial court permitted the prosecutor to proffer for the record the testimony from Gaines which he had sought to introduce. The prosecutor then called as witnesses two of the victim's male coworkers. Once again, although the trial court sustained defense counsel's objections to such testimony, the prosecutor attempted to ask each witness whether he had observed Sims making lewd comments to female coworkers. This occurred during both direct examination and redirect examination of these witnesses.
 {¶ 23} The prosecutor's next witness was Det. Perchinske. The prosecutor began his examination of Perchinske by asking him to describe his investigation of the victim's report. In this way, Perchinske testified that during his interview with Sims, Sims denied he ever "had any physical contact with [the victim] or any other female employees." The trial court admonished the prosecutor about such questions. However, in response to the very next question, Perchinske stated he informed Sims that other employees had attributed "lewd comments" to him. Perchinske further mentioned that Sims offered to take a voice stress test, and indicated that the test was "similar to a polygraph test."
 {¶ 24} Defense counsel objected immediately. After considering the matter at some length at a sidebar conference, the trial court sustained the objection. Defense counsel indicated that if any additional mention was made of the test, he intended to "move for a mistrial." When trial resumed, the court informed the jury "to ignore that question in its entirety."
 {¶ 25} At the conclusion of the evidence, the trial court overruled Sims' motions for acquittal on the charges. The parties proceeded to closing statements. During his, the prosecutor at one point told the jury that "defense claims that they didn't learn about this [incident] date until after the indictment was handed up * * * [are] absolutely totally one hundred percent false."
 {¶ 26} Moreover, following defense counsel's closing statement, the prosecutor advised the jury that if it believed the victim, it need not concern itself with whether due to the seriousness of the charges "the defendant's liberty was at issue here," because it was "entirely up to the judge as to whether he places [the defendant] on probation or [in] prison."
 {¶ 27} The jury ultimately returned a verdict of guilty against Sims on each count of the indictment. Before the case proceeded to sentencing, defense counsel filed on behalf of his client a motion for dismissal, or in the alternative, for a new trial pursuant to Crim.R. 33(A). He later filed a supplement to his motion. Counsel essentially argued that the prosecutor's improper conduct had tainted the fairness of Sims' entire trial.
 {¶ 28} The trial court subsequently entered an order in which it denied the defense motion for acquittal, but granted Sims a new trial. In its opinion issued in conjunction with the order, the court indicated it based its decision on the prosecutor's repeated efforts to disregard evidentiary rulings. The court determined this conduct had inured to the detriment of the defense, and thus undermined the jury's verdict.
 {¶ 29} Subsequently, this court granted the state's motion for leave to file an appeal of the trial court's decision to grant Sims' Crim.R.33 motion.
 {¶ 30} The state presents the following two interrelated assignments of error:
 {¶ 31} "I. The trial court erred when it granted defendant's motion for a new trial.
 {¶ 32} "II. The trial court erred when it granted defendant's motion in limine preventing the state from presenting other acts evidence."
 {¶ 33} Distilled to its essence, the state argues in these assignments of error that the prosecutor was justified in refusing to obey the trial court's evidentiary rulings because the rulings were improper.
 {¶ 34} The state contends: 1) allegations of sexual harassment made against Sims by his female coworkers fit within Evid.R. 404(B) as evidence of his "system;" and, 2) the jury is presumed to have followed the trial court's instruction to ignore Perchinske's mention of the "voice stress test." The state, therefore, asserts that the trial court abused its discretion in granting Sims a new trial. The state's argument and assertion are rejected.
 {¶ 35} A motion for a new trial is a matter left within the sound discretion of the trial court, and this court may not reverse the trial court's decision absent a finding the trial court abused its discretion. State v. Schiebel (1990),55 Ohio St.3d 71; State v. Williams (1975), 43 Ohio St.2d 88; Toledov. Stuart (1983), 11 Ohio App.3d 292. Motions for new trial are not granted lightly. Toledo v. Stuart, supra.
 {¶ 36} In analyzing a case of alleged misconduct during trial, the court must engage in a two-tier inquiry. State v.Keenan (1993), 66 Ohio St.3d 402; State v. Hart (1994),94 Ohio App.3d 665. First, it must determine whether misconduct occurred; if so, it must then determine if the misconduct materially affected the defendant's substantial rights.
 {¶ 37} The trial court in this case determined the prosecutor had intentionally and repeatedly ignored its evidentiary ruling that denied the state's request to use "other acts" evidence. Indeed, to lend weight to the trial court's point, the prosecutor even now on appeal maintains this evidence improperly was excluded. The admission or exclusion of evidence is another area, however, in which the trial court is granted discretion. Statev. Sage (1987), 31 Ohio St.3d 173.
 {¶ 38} It is well-settled in Ohio that pursuant to Evid.R. 404(A), evidence of other crimes, wrongs or acts occurring prior to or subsequent to, and independent of, the acts for which the defendant is on trial is not admissible to show the defendant's character or propensity for crime. State v. Williams (1988),38 Ohio St.3d 346; State v. Mann (1985), 19 Ohio St.3d 14, paragraph one of the syllabus. "Other act evidence is never admissible * * * `when its sole purpose is to establish that the defendant committed the act alleged of him in the indictment.'"State v. Matthews (1984), 14 Ohio App.3d 440.
 {¶ 39} Evid.R. 404(B) permits the introduction of other acts evidence in strictly limited circumstances. One of the circumstances allows evidence of other acts if it is relevant to prove the defendant's plan or scheme in committing the particular offense, otherwise known as his "method of operating." Nevertheless, even evidence of this type may be excluded if its prejudicial effect substantially outweighs its probative value. The state asserts both that the evidence proffered by the prosecutor in this case fits within the foregoing exception and that such evidence was not unduly prejudicial. This court disagrees.
 {¶ 40} As contemplated in Evid.R. 404(B), any tendency Sims possessed to subject his female coworkers to sexually offensive remarks, or even offensive touches as they walked past him, cannot be deemed acts which are distinctive enough to qualify as indicative of his "method of operating" in committing the completely distinguishable crimes of rape, kidnapping, or intimidation. State v. Hall (1989), 57 Ohio App.3d 144; Statev. Murphy (July 30, 1998), Cuyahoga App. No. 71775. The other acts neither form a part of the immediate background of the offenses, nor demonstrate the defendant's unique pattern of committing the crimes alleged. State v. Lowe (1994),69 Ohio St.3d 527.
 {¶ 41} Moreover, such acts hardly are relevant to whether on the date of either August 2 or August 16, 2003 he committed those crimes upon this particular victim. State v. Heath (Dec. 16, 1999), Franklin App. No. 99AP-66; State v. Kanetsky (June 6, 1999), Trumbull App. No. 97-T-0162; State v. Clemons (1994),94 Ohio App.3d 701.
 {¶ 42} Obviously, therefore, the prosecutor's sole purpose in bringing forward evidence of "other acts" committed by Sims merely was an effort to paint him as a man who engaged in sexually offensive behavior. State v. Jamison (1990),48 Ohio St.3d 182, 184. Since a review of the record demonstrates that the trial court's evidentiary ruling was appropriate, the trial court correctly assessed the prosecutor's repeated insistence upon placing the improper material into evidence as misconduct that tainted the fairness of the proceedings. State v. Smith
(1984), 14 Ohio St.3d 13.
 {¶ 43} This assessment is bolstered by the other improprieties committed by the prosecutor. The prosecutor made declarations during closing argument that defense counsel was being untruthful; on the other hand, the prosecutor himself made the untruthful assertion that upon being convicted of either rape or kidnapping, the defendant might possibly receive a sentence of "probation." State v. Hart, supra. Moreover, the prosecutor led Perchinske into testifying that Sims had offered to take a voice stress test, even after the court ruled such testimony inadmissible. State v. Smith (1998), 130 Ohio App.3d 360.
 {¶ 44} This case presents circumstances which fully justify the trial court's decision to grant Sims' motion for a new trial. This court cannot condone the prosecutor's disregard of the trial court's authority, and the evidence against Sims was not so compelling as to create confidence in the jury's verdict. Statev. Keenan, supra; State v. Purley, Lucas App. No. L-01-1005, 2002-Ohio-2689.
 {¶ 45} The state assignments of error, accordingly, are overruled.
 {¶ 46} The trial court's order is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. Case remanded to the trial court for further proceedings.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J. and Celebrezze, Jr., J. concur.